UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS
KANSAS CITY DIVISION

FRED NEKOUEE, individually, :
:
        Plaintiff, :
:
vs. : Case No. 2:18-cv-2194
:
ESA P PORTFOLIO L.L.C., a Delaware limited :
liability company :
:
:
        Defendant. :
_____/

## COMPLAINT
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, on his behalf and on behalf of all other mobility impaired individuals similarly situated (sometimes referred to as "Plaintiff"), hereby sues the Defendant, ESA P PORTFOLIO L.L.C., a Delaware limited liability company (sometimes referred to as "Defendant"), for Injunctive Relief, and attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

    1.    Plaintiff, Fred Nekouee, is an individual who resides in Tampa, Florida, in the County of Hillsborough.

    2.    Defendant's property, Extended Stay America, is located at 7201 W. 106th Street, Overland Park, Kansas 66212, in the County of Johnson.

    3.    Venue is properly located in the District of Kansas because venue lies in the judicial district of the situs of the property. The Defendant's property is located in and does business within this judicial district.

    4.    Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given

original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.   See also 28 U.S.C. § 2201 and § 2202.

5. Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.  Fred Nekouee has progressive multiple sclerosis and requires the use of a wheelchair for mobility.

6. When surfaces are not nearly flat, Plaintiff's mobility is limited in his wheelchair.

7. The Plaintiff cannot move up or down steep inclines in his wheelchair because he lacks the strength and also risks tipping his wheelchair forwards or backwards.

8. Excessive cross slopes cause the Plaintiff to be unstable in his wheelchair and such excessive slopes pose a risk of tipping the Plaintiff over sideways in his wheelchair.

9. On his visit to the Extended Stay America, the Plaintiff encountered excessively steep running and cross slopes in the parking lot and access aisle.

10. Mr. Nekouee travels to the Kansas City metropolitan area every three to six months to accompany his brother at heavy equipment auctions, or to visit heavy equipment dealerships, where he assists his brother compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment, or to visit his uncle or cousin who live in such area.

11. Fred Nekouee has stayed at the property which forms the basis of this lawsuit in March 2018, and he plans to return to the Kansas City metropolitan area and the property in July 2018 to avail himself of the goods and services offered to the public at the property since it is close to the heavy equipment auction and dealerships, and the home of his uncle and cousin he visits in the Kansas City metropolitan area.

12. The Plaintiff likes staying at moderately priced hotels like Extended Stay America,

and having a kitchen in the room is desirable since he likes to buy, store and eat some of his own groceries on his trips.

13. The Plaintiff has encountered architectural barriers at the subject property. The barriers to access that the Plaintiff encountered at the property have endangered his safety in his wheelchair, impaired his ability or those accompanying him to park a vehicle, impaired his ability to access the property, have impaired his use of the restrooms, and have impaired his ability to reach or access fixtures and amenities at the Extended Stay America.

14. The Plaintiff is deterred from visiting the Extended Stay America, even though he likes staying at such moderately priced hotels, because of the difficulties he will experience there until the property is made accessible to him in his wheelchair.

15. Defendant owns, leases, leases to, or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104. Defendant is responsible for complying with the obligations of the ADA. The place of public accommodation that the Defendant owns, operates, leases or leases to is known as Extended Stay America located at 7201 W. 106th Street, Overland Park, Kansas 66212 ("Extended Stay America").

16. Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations in paragraph 18 of this Complaint. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendant. Fred Nekouee desires to visit the Extended Stay America not only to avail himself of the goods and services available at the property but to assure himself that this property is in compliance with the ADA so that he and others similarly situated

will have full and equal enjoyment of the property without fear of discrimination.

17. The Defendant has discriminated against the individual Plaintiff Fred Nekouee by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the buildings, as prohibited by 42 U.S.C. § 12182 et seq.

18. The Defendant has discriminated, and is continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000 or less). Preliminary inspections of the Extended Stay America have shown that violations exist. The violations that Fred Nekouee personally encountered or observed on his stay at the Extended Stay America include, but are not limited to:

### PARKING

a. In the parking lot of the Extended Stay America, the parking space for disabled patrons has excessively steep running slope, as steep as 1:17.5 (5.7%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010 ADAAG § 502.4.

b. In the parking lot of the Extended Stay America, the parking space for disabled patrons has an excessively steep cross slope, as steep as 1:29.4 (3.4%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010 ADAAG § 502.4.

c. In the parking lot for the Extended Stay America, the running slope of the access aisle serving the disabled parking spaces is 1:17.2 (5.8%), which slope exceeds the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010 ADAAG § 502.4.

d. In the parking lot of the Extended Stay America, the cross slope of the access aisle

serving the disabled parking spaces is 1:33.3 (3%), which slope exceeds the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010 ADAAG § 502.4.

e. The cross slope of the walking surface towards the lobby is 1:10.6 (9.4%), which slope exceeds the maximum of 1:48 (2%), in violation of Federal Law 2010 ADAAG § 403.3.

f. The running slope of the accessibility ramp towards the lobby is 1:6.4 (15.7%), which slope is dangerously steeper than the maximum allowed slope of 1:12 (8%), in violation of Federal Law 2010 ADAAG § 405.2.

g. The slope of the accessibility curb ramp sides or he curb ramp flares are 1:3.4 (29.1%), which slope is dangerously steeper than the maximum allowed slope of 1:10 (10%), in violation of Federal Law 2010 ADAAG § 406.3.

h. The transition from the access aisles of the parking place marked for disabled use to the curb ramp leading to the accessible route to the restaurant, contains a change of level of 1.25 inches, which change of level is greater than the maximum allowed change of 0.5 inches, in violation of Federal Law 2010 ADAAG §§ 303.3 and 405.4.

i. The running slope of the diagonal/corner accessibility ramp towards the lobby is 1:5.4 (18.4%), which slope is dangerously steeper than the allowed slope of 1:12 (8%), in violation of Federal Law 2010 ADAAG § 405.2.

**LOBBY ENTRANCE DOOR**

j. The force needed to open the lobby door is 9 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010 ADAAG § 404.2.9.

**INTERIOR AREA**

k.  The lobby vending machine card reader is 61 inches above the finished floor, which level is higher than the maximum allowed height of 48 inches above the finished floor when the reach depth is less than 20 inches, in violation of Federal Law 2010 ADAAG § 308.2.2.

**LOBBY RESTROOM**

l.  The door force needed to open the restroom door in the lobby is 8 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010 ADAAG § 404.2.9.

m. The lobby restroom door pull side maneuvering clearance is a front approach beyond the latch and parallel to the doorway is 15 inches (blocked by plant vase) and less than the minimum clearance of 18 inches, in violation of Federal Law 2010 ADAAG § 404.2.4.

n.  The toilet paper dispenser in the lobby restroom is 0 inches from the front of the water closet or toilet and outside the reach range of an individual in a wheelchair of a minimum of 7 inches and a maximum of 9 inches in front of the water closet, in violation of Federal Law 2010 ADAAG § 604.7.

o.  The bottom edge of the mirror's reflecting surface in the lobby restroom is 44 inches above the finished floor, which height is higher than the maximum allowed height above the finished floor of 40 inches to permit an individual in a wheelchair to use the mirror, in violation of Federal Law 2010 ADAAG § 603.3.

p.  The coat hook in the lobby restroom is installed at 67 inches above the finished floor, which height is higher than the maximum allowed height above the finished floor of

48 inches, in violation of Federal Law 2010 ADAAG § 603.4.

### ACCESSIBLE GUESTROOM

q. The door force needed to open the accessible guestroom door is 8 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010 ADAAG § 404.2.9.

r. The accessible guestroom door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is 13 inches and less than the minimum required 18 inches, in violation of Federal Law 2010 ADAAG §404.2.4.

s. The kitchen sink in the accessible guestroom does not have clear floor or ground space since the space underneath is blocked by a trash bin, nor is knee and toe clearance provided, nor are the pipes properly insulated, in violation of Federal Law 2010 ADAAG §§ 305, 306.2.3, and 606.5.

t. The cabinet doors in the accessible guestroom require tight grasping, pinching or twisting of the wrist in violation of Federal Law 2010 ADAAG § 309.4.

u. The clear floor or ground space between objects, the desk and sofa, in the accessible guestroom is 18 inches and less than the required minimum of 30 inches, in violation of Federal Law 2010 ADAAG § 305.

v. The clear floor or ground space between the side drawer and air conditioner in the accessible guestroom is only 18 inches and less than the required minimum of 30 inches, which makes it very difficult for an individual in a wheelchair to reach or adjust the air conditioning thermostat, in violation of Federal Law 2010 ADAAG § 305.

w. The hood keys in the accessible guestroom are 65 inches above the finished floor

and higher than the maximum reach height above the finished floor of 48 inches, in violation of Federal Law 2010 ADAAG § 308.2.

x. The iron holder in the accessible guestroom is at 66 inches above the finished floor and higher than the maximum allowed reach height of 48 inches above the finished floor, in violation of Federal Law 2010 ADAAG § 308.2.

y. The cabinets in the accessible guestroom are at 57 inches above the finished floor and higher than the maximum allowed height of 48 inches above the finished floor, in violation of Federal Law 2010 ADAAG § 308.2.

z. The door latch of the accessible guestroom is 54 inches above the finished floor and higher than the maximum allowed reach height of 48 inches above the finished floor, in violation of Federal Law 2010 ADAAG § 404.2.7.

**ACCESSIBLE GUEST RESTROOM**

aa. The clearance width parallel to the shower compartment in the accessible guest restroom is 16 inches and less than the required minimum width of 30 inches, in violation of Federal Law 2010 ADAAG § 608.2.2.1.

bb. The slope of the floor or ground surface in the shower of the accessible guest restroom is 1:22.2 (4.5%) and steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law ADAAG § 304.2.

cc. The seat in the accessible guest restroom, roll-in shower compartment, is not a folding type, and does not extend from the back wall to a point within 3 inches (75 mm) of the compartment entry, in violation of Federal Law 2010 ADAAG § 610.3.

dd. In the accessible guest restroom, roll-in shower compartment, the grab bar is on the wall above the seat, in violation of Federal Law 2010 ADAAG § 608.3.2.

ee. In the accessible guest restroom, roll-in shower compartment, the shower spray is located at 68 inches above the floor and higher above the floor than the maximum reach height of 48 inches, which shower spray fixture cannot be moved up or down by an individual in a wheelchair and without twisting, in violation of Federal Law 2010 ADAAG §§ 308.2 and 608.6.

ff. The rear grab bar in the accessible guest restroom only extends 15 inches and 21 inches from the centerline of the water closet and not a minimum of 12 inches (305 mm) on one side and 24 inches (610 mm) on the other side, in violation of Federal Law 2010 ADAAG § 604.5.2.

gg. The toilet paper dispenser in the accessible guest restroom is outside the reach range of an individual in wheelchair, which dispenser centerline is 0 inches from the front of the water closet and not between a minimum of 7 inches and a maximum of 9 inches in front of the water closet, in violation of Federal Law 2010 ADAAG § 604.7.

hh. In the accessible guest restroom, the bottom edge of the mirror's reflecting surface is 44 inches above the finished floor, which height is higher than the maximum allowed height of 40 inches above the finished floor to permit an individual in a wheelchair to use the mirror, in violation of Federal Law 2010 ADAAG § 603.3.

ii. The water closet or toilet in the accessible guest restroom does not have the flush control mounted on the open and wide side of the clear floor space, in violation of Federal Law 2010 ADAAG § 604.6.

jj. In the accessible guest restroom, the coat hook is installed 65 inches above the finished floor, which height is higher than the maximum reach of 48 inches above the finished floor, in violation of Federal Law 2010 ADAAG §603.4.

kk. In the accessible guest restroom, the towel shelf is 58 inches above the finished floor, which height is higher than the maximum reach height of 48 inches above the finished floor in violation of Federal Law 2010 ADAAG § 603.4.

**FITNESS CENTER**

ll. The door force needed to open the door to the fitness center is 7 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010 ADAAG § 404.2.9.

mm. The clear floor or ground space between work-out machines is 22 inches and less than the required minimum of 30 inches, in violation of Federal Law 2010 ADAAG § 305.

nn. The phone in the fitness center is installed at 59 inches above the finished floor and higher than the maximum of 48 inches above the finished floor to permit an individual in a wheelchair to use the phone, in violation of Federal Law 2010 ADAAG § 308.2.1.

19. All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

20. The discriminatory violations described in paragraph 18 are not an exclusive list of the Defendant's ADA violations. Plaintiff requires the inspection of the Defendant's place of public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access. The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendant's building and its facilities, and have otherwise been

discriminated against and damaged by the Defendant because of the Defendant's ADA violations, as set forth above. The individual Plaintiff, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein. In order to remedy this discriminatory situation, the Plaintiff requires an inspection of the Defendant's place of public accommodation in order to determine all of the areas of non-compliance with the Americans with Disabilities Act.

21. Defendant has discriminated against the individual by denying individuals access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq. Furthermore, the Defendant continues to discriminate against the Plaintiff, and all those similarly situated by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

22. Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendant, a remedy in equity is warranted.

23. Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendant pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

24. Defendant is required to remove the existing architectural barriers to the physically

disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendant's place of public accommodation since January 26, 1992, then the Defendant is required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendant's facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendant's facility must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

25. Notice to Defendant is not required as a result of the Defendant's failure to cure the violations by January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000 or less). All other conditions precedent have been met by Plaintiff or waived by the Defendant.

26. Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff Injunctive Relief, including an order to require the Defendant to alter the Extended Stay America and adjacent parking lot spaces to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facility until such time as the Defendant cures its violations of the ADA.

**WHEREFORE,** Plaintiff respectfully requests:

    a. The Court issue a Declaratory Judgment that determines that at the commencement of the subject lawsuit the Defendant is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

    b.  Injunctive relief against the Defendant including an order to make all readily achievable alterations to the facility; or to make such facility readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendant to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

    c.  An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205.

    d.  Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

## **DESIGNATION OF PLACE OF TRIAL**

Plaintiff, Fred Nekouee, by and through his undersigned counsel, hereby designates Kansas City, Kansas as the place of trial for this action.

>                       Respectfully submitted,
> 
>                        s/Robert J. Vincze_____
>                        Robert J. Vincze (KS #14101)
>                        Law Offices of Robert J. Vincze
>                        PO Box 792
>                        Andover, Kansas 67002
>                        Phone: 303-204-8207
>                        Email: vinczelaw@att.net
> 
>                        *Attorney for Plaintiff Fred Nekouee*